WATKINS, Judge.
This is an action on an open account for car repairs. The trial court rendered judgment in the amount of $845.17, representing the balance due on the account less the costs connected with the installation of an alternator, which proved defective. In addition, attorney’s fees in the amount of $100.00 were awarded. We affirm.
The questions involved, except with regard to attorney’s fees, are largely questions of fact. Although the trial court did not assign reasons for judgment, we find the determination of the trial court not to have been clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
On November 15, 1979, defendant, Huey P. Martin, brought a 1968 Mercedes-Benz, Model 200-D (the “D” indicating the car had a diesel engine) to plaintiff, Classic Car Imports, Inc., in Baton Rouge, (which was a dealer for Peugeot, not Mercedes-Benz) for repairs. When the car was brought to Classic, the car would not start unless it was shoved, water leaked from the radiator, and it had broken taillights. Martin testified that he told the people at Classic that he wanted everything necessary to be done to put the car in condition for his daughter to drive while she was at college. David Punch, General Manager and Service Manager at Classic, testified that Martin merely said he wanted the engine repaired so it would start, the water leak repaired, and the taillights repaired. In any event, Martin signed a repair order which in fine print provided for reasonable attorney’s fees (presumably in the event the bill was not properly or timely paid). Martin testified that he knew most work orders provided for attorney’s fees, but he did not read the fine print. Punch testified he went over the problems with the car before he made out the repair order. His testimony also at one point could be taken to indicate that the repair order contained a complete list of the items to be repaired when Martin signed it. This is apparently not the case, *1391 as the repair order sets forth the repairs in the past tense, e. g. “removed and redrilled & taped 3 bolts”. However, we find that the repairs were authorized by Martin’s general authorization to put the car in good condition, even assuming that Punch’s testimony is erroneous that he went over the repairs to be made with Martin.
Work on the car was performed by Classic and completed. Nothing was done to correct poor compression, which was one of the causes of the difficulty in starting the car, as Classic considered the job unduly expensive in view of the low value and age of the car.
The car was not picked up until January. Martin gave Classic a check which he asked Classic to hold until he could pay by cash the next day. The next day, Martin came by with the car and complained that the alternator was not working properly. Martin’s testimony indicates he did not pay by cash at that time because of the trouble with the alternator. Classic attempted to negotiate the check, and it was returned for lack of sufficient funds.
The car continued not to start and to leak water. Martin brought the car to Harry Womack, an experienced repairer of diesel engines, who later bought the car. He found the main problem to be lack of compression, and after he had purchased the car, rebored the cylinders, and put in new rings to correct this problem. Also, he repaired the leak by putting in an inexpensive can of radiator additive. Womack testified that he now has no problems with the car.
Martin contends that the work done by Classic was unnecessary, as it did no good. We have thoroughly reviewed the record, and conclude that, probably, the work done by Classic and that done by Womack both contributed to the ultimate repair of the car, and that, therefore, the work done by Classic fell within Martin’s broad authorization, even if it was not specifically verbally authorized. Classic repaired the taillights, and also put in new bolts in the block, replaced the gaskets, replaced the fuel injectors, and installed a block heater to heat the engine on cold days, all of which was done to improve the slow starting and end the leak. We cannot say that had this work not been done Womack’s work alone would have corrected the problems. There is ample evidence in the record to support a determination that the work of both Classic and Womack contributed to the car’s repair. The trial court was not clearly wrong in its apparent determination that the work was authorized, and was of benefit to Martin.
Martin contends that because on two pri- or occasions, he had brought his Mercedes to the Classic location for repair of a water leak, he is entitled to set-off or compensation for the amount expended on those two prior occasions, and for inconvenience and frustration. However, Classic did not work on Mercedes automobiles at those times; it rented out stalls at its dealership in Baton Rouge to Axel’s German Imports, a Mercedes dealer in Jackson, Mississippi, to make repairs on Mercedes automobiles. The work orders on those two prior occasions, which were signed by Martin, clearly indicated that the name of the repairer was Axel. We do not find that Axel’s failure to repair the water leak on those two prior occasions is a basis of set-off against Classic.
With respect to attorney’s fees, we see that Martin himself admitted that he knew work orders provided for attorney’s fees. Therefore, his failure to read the work order in question is no defense.
The judgment of the trial court is affirmed, at appellant’s cost.
AFFIRMED.